### NEW AMSTERDAM CASUALTY COMPANY, Plaintiff, v. SHUMAKER, Defendant.

Common Pleas Court, Franklin County.

No. 167242. Decided October 23, 1951.

Richard Huggard and Gundy Lane, Columbus, for plaintiff.
Jos. E. Shannon, Sater & Sater, Columbus, for defendant.

## OPINION

By REYNOLDS, J.

In this case plaintiff seeks to recover from the defendant monies expended by it in settlement of claims for property damage and personal injuries sustained as a result of a collision between defendant's truck and an automobile owned by Raymond Dobson.

Plaintiff had issued a policy of insurance to Ward E. Lanning

in 1941, insuring the said Lanning against liability for property damage and personal injuries occasioned by accident in the use of certain automobiles, trucks or trailers owned or hired by the said Lanning who held a permit from the Public Utilities Commission of Ohio covering his operations as a private carrier.

An endorsement on a form provided by the Utilities Commission was attached to the policy in question which endorsement provided in part as follows:

"The purpose of this endorsement is to make certain during the term of said policy and any renewals thereof the liability of the insurance company to any person injured in person or property within the state of Ohio by the negligence of the insured as hereinafter set forth.

"Whenever the word 'insured' appears in this endorsement it shall be held to mean the motor transportation company, or private motor carrier named in the policy, its agents and employees, and also held to mean any independent contractor of said motor transportation company or private motor carrier, engaged in transporting persons or property, or providing or furnishing such transportation, and also held to mean each employer of a private motor carrier authorized in its permit and registration against loss sustained by reason of the death of or injury to persons and the loss of or damage to property resulting from the negligence of such private motor carrier its agents and employees.

"No condition, provision, stipulation or limitation contained in the policy or any endorsement thereon nor the violation of any of the same by the insured shall affect in any way the rights of any person injured in person or property within the State of Ohio by negligence of the insured while operating as aforesaid or relieve, the insurance company from the liability provided for in this endorsement or from the payment to such persons of any judgment within the limits set forth in the policy, but the conditions, provision, stipulations and limitations contained in the policy or any other endorsement thereon shall remain in full force and be binding as between the insured and the insurance company. '

In addition to equipment owned and operated by himself or his employees, Lanning from time to time hired other truckers to fulfill his contracts for hauling merchandise for third parties and pursuant to this practice, sometime prior to May 28, 1942, he contracted with defendant Dewey Shumaker, to haul freight from Coshocton to Vandalia, Ohio, Shumaker using his own tractor and trailer and furnishing his own gas and oil, and his own driver, and receiving from Lanning 70% of the freight charge received by Lanning from his customer.

Also prior to May 28, 1942, The Public Utilities Commission of Ohio issued to Lanning a certificate of convenience and necessity, and Lanning filed with the Commission a certificate of liability insurance issued by plaintiff to Lanning.

The petition alleges that on May 28, 1942 defendant, acting through an employee, while driving defendant's truck back to Coshocton after having delivered a load of merchandise in Vandalia, negligently ran into an automobile, damaging it and injuring the occupants; that plaintiff settled the various claims, and seeks recovery for the same plus the sum of $200.00 as expenses in connection with the accident and settlements.

Defendant in his amended answer admits that his truck was involved in an accident while being used in the furtherance of Lanning's transportation business, and admits that plaintiff as the insurer of Lanning made settlements for damages and injuries resulting from the accident but denies any liability on his part, and alleges that in accordance with his contract with Lanning, the latter hired from defendant both the equipment and the driver, and that at the time of the accident, the said driver was acting not as his agent and employee but as the agent and employee of Lanning, and that the insurance policy was for the protection of Lanning and that plaintiff under the terms of said policy was obligated to save Lanning harmless from any actions resulting from the operation of any and all trucks used in his business.

In a second defense defendant pleads that if plaintiff made any payments other than in strict compliance with the contract of insurance, it acted as a volunteer and cannot recover from defendant.

Upon trial a jury was waived and the case tried to the Court on a stipulation of facts together with some oral testimony.

The issue in the case is whether or not the policy of insurance issued by plaintiff to Lanning inured to the benefit of Shumaker. If it did, then of course there can be no recovery in this case as it is axiomatic that an insurer may not recover from the insured, for payments made pursuant to the policy provisions.

The stipulation of facts submitted in this case is as follows:

"1. That plaintiff is a corporation as alleged in the petition.

"2. That Exhibit 'A' attached hereto and made a part hereof is a policy of insurance issued by plaintiff to Ward E. Lanning, which was in full force and effect on May 28, 1942, and which covered all matters alleged in plaintiff's petition and agreed with the said Ward E. Lanning to pay on his behalf all sums

which the said Lanning shall become liable to pay by reason of the liability imposed upon him by law for damages for bodily injury up to the sum of Twenty-Five Thousand and no/100 ($25,000.00) Dollars for each person in each accident, and Fifty Thousand and no/100 ($50,000.00) Dollars for all persons in each accident, and for injury to or destruction of property, including the loss of use thereof, up to Five Thousand and no/100 ($5,000.00) Dollars, which injuries and damages shall have been caused by accident in the use of certain automobiles, trucks or trailers owned or hired by the said Lanning.

"3. That Exhibit 'B' attached hereto and made a part hereof is the permit issued by the Public Utilities Commission of Ohio under which the said Ward E. Lanning was operating on May 28, 1942.

"4. That the said Ward E. Lanning in operating under said permit and in the performance of contracts entered into thereunder, used his own vehicles and vehicles owned by others, to enable him to perform said contracts.

"5. That on May 28, 1942, there was in force an agreement entered into between the said Ward E. Lanning and defendant, whereby the defendant agreed to and did furnish a 1939 Ford Tractor and a Kingham Trailer and driver, paid for all gasoline and oil used in the operation thereof, and the wages of the said driver, and all repairs and maintenance upon said tractor trailer outfit during its operation under said agreement; and whereby the said Ward E. Lanning agreed to pay defendant as compensation, 70% of all freight charges collected out of the operation of said unit under said agreement.

"6. That the tractor trailer outfit furnished under the agreement described in Section 5, was owned by defendant; was operated by one Elwood B. Shaw at all times set forth in the petition and that the said Elwood B. Shaw was a driver hired by defendant.

"7. That on May 28, 1942, the said tractor trailer unit was being operated by the said Elwood B. Shaw in a northerly direction on Ohio Route No. 16, near Conesville in Coshocton County, Ohio, having delivered a load of freight at Vandalia, Ohio, pursuant to said contract with said Lanning for said Lanning, and was returning to the place of business of Lanning in Coshocton for the purpose of obtaining more freight pursuant to said contract, and was then and there operating said tractor and trailer under and pursuant to Exhibit 'B'.

"8. That at said time and place a 1933 Ford Sedan automobile owned by Raymond Dobson, and being operated by Paul Dobson was operated in a southerly direction upon said road and approaching the said tractor trailer outfit of defendant.

"9. That on May 28, 1942, a collision occurred near Conesville on Route No. 16 in Coshocton County, between the said tractor and trailer outfit of defendant and said 1933 Ford Sedan in which Paul Dobson, a minor 18 years of age, Lawrence Dobson, and Ross Dobson, a minor 14 years of age were riding.

"10. That the said Ward E. Lanning reported such collision to plaintiff promptly.

"11. That the said Raymond Dobson, Paul Dobson, Lawrence Dobson and Ross Dobson and/or the parents of said minors, presented claims to plaintiff for injuries and damage resulting from said collision.

"12. That on or about June 5, 1942, a demand was made by plaintiff upon defendant to take over or cause to be taken over, the investigation of said collision, the defense of such claims and the settlement thereof and the obtaining of releases from said claimants; and that defendant refused and at all times since, has refused to comply with said demand.

"13. That plaintiff investigated said collision and made settlements with the said claimants in the amounts stated in the petition taking releases therefor, releasing the said Ward E. Lanning, defendant Dewey Shumaker, and the said Elwood B. Shaw.

"14. That the amounts so paid out were expedient.

"15. That at all times stated in plaintiff's petition tax cards and signs issued by the Public Utilities Commission of Ohio and the Interstate Commerce Commission to the said Ward E. Lanning were on defendant's tractor and trailer unit for the purpose of identifying its use, and complying with all legal requirements.

"16. That all investigation, settlement and payments undertaken and made by plaintiff as described in this stipulation was in accordance with the terms of the insurance policy issued by plaintiff to the said Ward E. Lanning, and that in making said settlements plaintiff was legally bound to obtain a full and complete release of the defendant, and the said Elwood B. Shaw.

"17. That Exhibit 'C' attached to and made a part hereof is a copy of Supplement I to Administrative Order No. 125 made by the Public Utilities Commission of Ohio and that said order was in force on May 28, 1942.

"18. That the facts set forth in this stipulation are true, and that the stipulation, or any part thereof, may be read in evidence by either party at the trial and the exhibits attached hereto may be offered in evidence, subject to any objections by either party as to the relevancy of any stipulation or exhibit contained herein."

The oral testimony supplementing the stipulation of facts was mainly directed to the determination of the effect of the contract between Lanning and Shumaker.

Plaintiff's contention is that Shumaker was an independent contractor and as such not covered by the contract of insurance between plaintiff and Lanning, while it is defendant's claim that the insurance policy issued to Lanning and supplemented by the endorsements required by the Public Utilities Commission was for his benefit as well as the benefit of Lanning.

The endorsement, which is in evidence as attached to the Policy of Insurance, marked as Exhibit "A," and a part of which is set out in the petition, is claimed by plaintiff as intended for the benefit only of third persons suffering injuries or damages resulting from the negligent operation of any and all trucks operated by or for the named insured.

In support of this contention is filed in the case a decision of Judge Black of the Licking County Common Pleas Court in the case of New Amsterdam Casualty Co. v. Leon Nethers, in passing upon a demurrer to a petition substantially like the one in the instant case.

Inasmuch as the facts were practically the same as those here under consideration, the decision is set out in full as follows:

"This case comes before the Court upon a general demurrer to the petition. It is an action in subrogation.

"Plaintiff insured The McKee Truck Lines Inc., hereinafter referred to as McKee, in a casualty policy against bodily and property damage. The insured hired the defendant to carry out a certain hauling contract it had entered into, in the course of the performance of which an accident occurred and the insurer was called upon to and did settle certain damage claims growing out of such accident.

"Plaintiff recites that the insured was licensed by the P. U. C. O. to perform the transportation service so furnished in this case and also to contract for such performance in this case.

"Plaintiff also alleges the requirement by the P. U. C. O. of the compliance with the terms of the following endorsement upon the casualty insurance policy, to-wit:

" 'The purpose of this endorsement is to make certain during the term of said policy and any renewals thereof the liability of the insurance company to any person injured in person or property within the state of Ohio by the negligence of the insured as hereinafter set forth.'

" 'Whenever the word "insured" appears in this endorsement

it shall be held to mean the motor transportation company, or private motor carrier named in the policy, its agents and employees, and also held to mean any independent contractor of said motor transportation company or private motor carrier, engaged in transporting persons or property, or providing or furnishing such transportation, and also held to mean each employer of a private motor carrier authorized in its permit and registration against loss sustained by reason of the death of or injury to persons and the loss of or damage to property resulting from the negligence of such private motor carrier its agents and employees.'

"'No condition, provision, stipulation or limitation contained in the policy or any endorsement thereon nor the violation of any of the same by the insured shall affect in any way the rights of any person injured in person or property within the State of Ohio by negligence of the insured while operating as aforesaid or relieve the insurance company from the liability provided for in this endorsement or from the payment of such persons of any judgment within the limits set forth in the policy, **but** the condition, provision, stipulations and limitations contained in the policy or any other endorsement thereon shall remain in full force and be binding as between the insured and the insurance company.'

"Under this rider or endorsement on the policy, defendant claims that he was along with McKee an insured and as such was immune from liability to the plaintiff.

"In the opinion of the Court this endorsement upon the policy was solely for the benefit of the public and in no wise affected the legal status existing between the defendant and plaintiff, or concerned their contractual relations, if any.

"There does not appear to have been any privity or contract between the parties to this action. The defendant, it appears, was an independent contractor; he had bought no insurance from plaintiff and had paid no premium or in any way participated in the insurance coverage, except as provided by the endorsement on the policy which merely extended the benefits of this policy to any member of the public who might be injured in person or property. All other 'conditions, provisions, stipulations and limitations contained in the policy or any other endorsement thereon, shall remain in full force and be binding as between the insured and the insurance company.' The purpose of this endorsement is clear, merely for the sole benefit of the public, to extend its protection from damage to third persons, but not to alter the contractual relations between McKee and the plaintiff in any particular. If this is so, aside from its duty to settle damage done the public by the

defendant, what immunity rights had the defendant? The protection against chance of damage was bought and paid for by McKee and not by defendant.

"Let us suppose there was no insurance to protect McKee from liability, then a person damaged would have recourse against both McKee, secondarily and its servant, the defendant herein, primarily, as joint tort feasors. A recovery against McKee, the master, by a person damaged by Nethers, the servant, would be recoverable by McKee against Nethers, the person responsible for the damage. Therefore, if the plaintiff herein paid the liability of McKee it is, in all right and justice, suprogated to McKee's right to recover against the defendant herein.

"In the last four lines on the first page of the petition appears the following allegation:

" 'Said contract of insurance specifically excluded any agreement to pay damages in the manner hereinafter set forth arising out of the liability of the owner of any automobile, truck of trailer hired by McKee as aforesaid.'

"This in so many words states that the policy of insurance itself reserves the right of recovery to McKee for liability from 'the owner of any automobile, truck or trailer hired by McKee as aforesaid.'

"No copy of the insurance contract is before the Court, and for the purpose of this demurrer all allegations of the petition are to be taken as true.

"The case of Builders and Manufacturers Mutual Casualty Co., v. Preferred Automobile Insurance Co., 118 Fed. Reporter, 2nd series, page 118, et seq., while in some respects similar as to facts, does not turn upon the same issues or questions of law as the instant action, and the assumption that the 'servant' in the case cited is an 'insured' is an obiter dictum with which this Court cannot agree.

"The demurrer is overruled. Defendant shall plead within fifteen days."

However, the Court in that case omitted certain provisions of the endorsement from which the above quoted portions were taken, and which in the opinion of this Court are controlling.

These same provisions were omitted by the plaintiff in its petition in which a part of the endorsement was set out.

Following are provisions of said endorsement considered by the Court as determinative of the issues in this case:

"In consideration of the premium stated in the policy to which this endorsement is attached, the Insurance Company agrees to pay to the judgment creditor any final judgment rendered against the insured upon a liability hereunder within the limits set forth in the policy, and further agrees that upon

failure of the insured to pay any such final judgment such judgment creditor may maintain an action against the Insurance Company in the proper court to compel such payment.

"For valuable consideration received by it, the said Insurance Company, by the policy of insurance to which this endorsement is attached, hereby insures and agrees to indemnify the insured during the term of said policy and any renewal thereof, against loss sustained by reason of the death of, or any injury to, any person or persons, except employees of the insured engaged in the course of their employment, and for loss of or damage to property, including baggage and personal effects of passengers (in excess of $50.00), except property of the insured and cargo, within the State of Ohio, resulting from the negligence of the insured, while operating any vehicle or vehicles of any kind, character or description in motor transportation company service or private motor carrier service; whether or not such vehicle or vehicles be listed in said policy of insurance or with the Public Utilities Commission of Ohio. The foregoing is in addition to all liability from risks provided for in said policy. For the purpose of determining any additional premium due the Insurance Company the insured shall furnish the Insurance Company every thirty (30) days with a complete description of all vehicles used by the insured and not specifically described in the policy."

The Supreme Court of Ohio had before it a similar question as to the scope of a liability insurance policy issued to a private carrier, with the identical endorsement as here involved, in the case of **Wood v. Vona, 137 Oh St 91.**

The second syllabus of that case is as follows:

"Such a policy which, by its terms, indemnifies the insured against loss sustained by reason of the death of or injury to any member of the public caused by the negligence of the insured, his agent (his servant), or his independent contractor, while acting as a private carrier under a permit issued by the Public Utilities Commission, covers the insured, his agent, his servant or his independent contractor in the movement of a vehicle coming from a repair shop; such movement is in the transportation service within the meaning of the policy, although such vehicle was not then being operated for the transportation of freight. (**Mitchell, Admx., v. Great Eastern Stages, Inc., 140 Oh St, 137,** approved and followed.)

The facts in that case, relating to liability and coverage are far less strong than those in the instant case.

There Glenn Cartage was a private carrier, operating under a permit from The Utilities Commission authorizing it to en-

gage in certain transportation over the Public Highways of Ohio. Vona was the owner of a tractor and trailer and for sometime before the accident he had hauled exclusively for Green Cartage.

On June 22, 1942, he hauled a load of steel to Cleveland for Glenn Cartage. On the trip his tractor became disabled, but he finished the trip and returned to his home in Canton, and then drove his tractor to Akron for repairs and after this was finished he proceeded on July 5th to return to Canton to get his trailer expecting to report to Glenn Cartage on the 6th to secure another load to be hauled for that company, pursuant to instructions from an agent of said company. On his way to Canton he had an accident which resulted in the injured person securing a judgment against him in the sum of $10,000.

The judgment creditor then brought suit against The Ocean Accident and Guarantee Corporation, the insurer of Glenn Cartage, and one of the primary questions was whether the insurance policy in question protected Vona who admittedly was not named in the policy, nor was his equipment described.

Glenn Cartage as a private carrier had been required to carry liability insurance in accordance with §614-15 GC which provides as follows:

"No permit shall be issued by the commission to any private motor carrier until there shall have been filed with the commission a liability insurance certificate, policy or bond satisfactory to the commission in such sum and with such other terms and provisions **as the commission may deem necessary adequately to protect the public,** having due regard for the number of persons and amount of property affected, which certificate, policy, policies or bonds, shall insure the private motor carrier and each employer authorized in its permit against loss sustained by reason of the death of or injury to persons and the loss of or damage to property resulting from the negligence of such private motor carrier, its agents and employees. * * *" (Emphasis ours.)

It had filed with the Utilities Commission a liability insurance certificate, issued by Ocean Accident and Guarantee Corporation and the identical endorsement here under consideration was attached to the said certificate. In its decision the Court said:

"There is evidence in the record, which, if believed, would justify the conclusion that Vona was acting under the direct instructions of Glenn Cartage at the time of the collision. That narrows our question to what is meant by the following phrase, found in the Public Utilities Commission endorsement attached to and made part of the policy: '* * * **while operat-**

ing any vehicle or vehicles of any kind, character or description in motor transportation company service or private motor carrier service.' (Emphasis ours.)

"Ocean insists that the policy covers the vehicles only while actually engaged in hauling. That contention was considered and repudiated by this court in a unanimous decision in the Mitchell case, supra. * * *

"Applying the legal principle announced in the Mitchell case to the situation here presented, to-wit, that the collision and damage occurred while the tractor, after being repaired, was being driven to a place to get the trailer and thence to the plant of Glenn Cartage to resume hauling for it, the conclusion is inescapable that during any or all parts of that operation the equipment was within the coverage of the policy. That is unmistakably true unless we were willing to recede from the position established by the Mitchell case. In the instant case the movement was in the transportation service within the meaning of the policy, although such vehicle was not then being operated for the transportation of freight."

To the same effect is the decision in the case of **Cook v. The Ocean Accident and Guarantee Corp., 138 Oh St 111.**

In view of those decisions and the specific provisions in the endorsement attached to the policy of insurance to Lanning, wherein it is agreed by the insurer that in insures the insured during the term of the policy and then specifically provides that the word "insured" shall be held to mean the motor carrier named in the policy, its agents, employees and independent contractor of said motor carrier engaged in transporting persons or property, or providing or furnishing such transportation service, it seems clear that defendant was protected under the policy whether he was an independent contractor or an employee of Lanning.

From the evidence the Court concludes that he was an independent contractor, but coming within the express provisions of the contract of insurance as being insured therein and thereby there can be no recovery against him by the insurer.

It is therefore the judgment of the Court that plaintiff's action be dismissed and that defendant recover his costs.

An entry may be drawn accordingly, saving such exceptions as are desired.